52 F.3d 327
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Larry WASHPUN (94-1157); Nicolas Velasquez (94-1170),
Defendants-Appellants.
 Nos. 94-1157, 94-1170.
 United States Court of Appeals, Sixth Circuit.
 April 20, 1995.
 
 Before: GUY, BOGGS, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants, Larry Washpun and Nicolas Velasquez, both entered Fed.R.Crim.P. 11 guilty pleas in early November 1993. Less than one week before his February 10, 1994, sentencing date, Washpun filed a motion to withdraw his plea, which was denied.
 
 
 2
 On appeal, Washpun argues it was error to deny his plea withdrawal motion. He also claims the trial judge failed to elicit a proper factual basis for his plea. Finally, he contends his trial counsel was ineffective.
 
 
 3
 The only issue Velasquez raises on appeal concerns the manner in which his sentence, which was to run concurrently with an earlier sentence, is being interpreted by the Bureau of Prisons.[1]
 
 I.
 The Washpun Appeal
 
 4
 Pursuant to his written Rule 11 plea agreement, Washpun pled guilty to conspiracy to possess with intent to distribute, and to distribute various controlled substances, including marijuana, heroin, and cocaine. The Rule 11 plea agreement specifically provided that "the parties agree that any sentence of incarceration shall not exceed 160 months." (App. 42.) Attached to, and made a part of, the Rule 11 plea agreement were sentence computation worksheets in which the parties had set forth in detail Washpun's sentence computation, subject to final approval by the trial judge. Since the conspiracy count to which Washpun pled made no reference to drug quantities, the Rule 11 plea agreement worksheets provided Washpun's offense level would be computed on the basis of the "equivalent of between 400-500 gr of cocaine." (App. 50.) This gave Washpun an offense level of 24, which was set forth on the worksheet. The government agreed to a three-level reduction for acceptance of responsibility, resulting in an offense level of 21. Washpun's criminal history category was computed as IV.
 
 
 5
 This did not end the computation, however, because Washpun's past criminal record put him under the career offender provisions of the sentencing guidelines. U.S.S.G. Sec. 4B1.1. This resulted in the offense level being recomputed as 32, less the three levels for acceptance of responsibility, giving a final offense level total of 29. The career offender provisions also dictated that the criminal history category be level VI. An offense level total of 29 and a criminal history category of VI gave a guideline range of 151-188 months, which was set forth in the worksheets. This sentencing range was consistent with the earlier language in the plea agreement providing that any custody sentence imposed would not exceed 160 months.
 
 
 6
 The Rule 11 plea agreement also provided that, if the defendant furnished substantial assistance to the government, the government would move for a section 5K1.1 downward departure to 96 months. Notwithstanding Washpun's effort to withdraw his plea, the government did live up to its promise and moved for a downward departure. Washpun was sentenced by the trial judge to 96 months imprisonment.
 
 
 7
 In Washpun's motion to withdraw his plea, he admits "complicity in the trafficking of marijuana," but goes on to state that he was "not involved in the trafficking of cocaine," and that his offense level was improperly computed based upon cocaine trafficking. The presentence report did contain the statement that "[d]uring the conspiracy, WASHBURN [sic] was involved with the distribution of the equivalent of 400 to 500 grams of cocaine." (App. 161.) Upon reading this language, Washpun apparently concluded that he was being sentenced on the basis of having distributed cocaine, which he steadfastly denied doing. In this regard, Washpun is mistaken.
 
 
 8
 To make the plea agreement as precise as possible, the agreement provided that the base offense level would be computed using 400-500 grams of cocaine as the agreed upon reference point. The agreement did not state, nor did the presentence report state, that Washpun had personally distributed this much cocaine, or any cocaine at all for that matter. It was the government's contention that the conspiracy of which Washpun was a part had distributed at least this much cocaine, or as the guidelines provide, an "equivalent amount of other Schedule I or II Stimulants." U.S.S.G. Sec. 2D1.1(10).
 
 
 9
 At the hearing on the motion to withdraw his guilty plea, the district judge clearly understood the nature of Washpun's dissatisfaction with the presentence report. The trial judge stated: "He pled guilty to being involved with the equivalent of 400 to 500 grams of Cocaine. That doesn't mean that he actually handled Cocaine." (App. 124.) The court also stated: "He [Washpun] said that [marijuana] was his involvement. However, the charge is a conspiracy, and there certainly is evidence that these other controlled substances existed and were distributed during the course of the conspiracy, to which he was part." (App. 124.) The assistant United States attorney then added: "Your Honor, I should clarify to--for the Court, the 400 to 500 grams of Cocaine was a limited relevant conduct that included both Marijuana and the foreseeable Cocaine and Heroin that was being distributed and sought by members of this conspiracy, including agreements by this defendant to obtain Crack Cocaine and other controlled substances on behalf of Marlon Holland and the conspiracy." (App. 125.) Washpun is simply wrong when he asserts that the reference to cocaine somehow affected the computation of his sentence in an inappropriate manner.
 
 
 10
 Rule 32(d) of the Federal Rules of Criminal Procedure provides that a defendant may be allowed to withdraw a guilty plea if he demonstrates "any fair and just reason" for doing so. Whether to allow a defendant to withdraw a guilty plea "is a matter within the broad discretion of the district court." United States v. Spencer, 836 F.2d 236, 238 (6th Cir.1987) (quoting United States v. Kirkland, 578 F.2d 170, 172 (6th Cir.1978)). It is clear that the burden rests on the defendant to establish that a motion to withdraw a plea should be granted. United States v. Triplett, 828 F.2d 1195, 1197 (6th Cir.1987). In Triplett and Spencer and their progeny, we have developed a five-factor test to be used in analyzing whether a court properly exercised its discretion in denying a motion to withdraw a plea. Although the parties spend considerable time in their briefs discussing the application of these factors, we find it unnecessary to do so for two reasons.
 
 
 11
 First, Washpun is mistaken when he alleges that he is being held responsible for personally distributing cocaine. It is clear that he misunderstands the manner in which the sentencing guidelines deal with drug equivalencies in establishing offense levels. The fact that he may have been under a misunderstanding, however, in no way vitiates his plea, because drug quantities did not drive his ultimate sentence computation. With his criminal record, Washpun qualified as a career offender, and, accordingly, it was mandatory that his offense level be computed at 32, with a criminal history classification of VI. This was clearly set forth in the worksheets attached to the Rule 11 plea agreement. The only way that drug quantities or drug equivalencies could have impacted his sentence is if the drug computation yielded an offense level higher than 32. Here, the offense level resulting from the drug quantity computation was 24, and so the higher career criminal offense level of 32 had to be applied. Since drug quantities did not impact on his sentence, regardless of what drugs were involved, this becomes our second reason for finding it unnecessary to parse our holdings as they relate to the granting or denial of a motion to withdraw a guilty plea.
 
 
 12
 Washpun's argument that the court failed to ascertain a factual basis for his guilty plea is really a spin-off of the argument he makes in support of his motion to withdraw his guilty plea. In essence, he claims that the guilty plea proceeding did not establish his involvement with cocaine. The guilty plea hearing was very complete, and the trial judge asked all of the questions of the defendant that were required. The defendant indicated that he fully understood the conspiracy charge to which he was pleading, and he also specifically indicated he had agreed with another co-conspirator to distribute, and did distribute, marijuana while he was in prison. The assistant United States attorney then stated that "the Government would be prepared to prove that this Defendant had other conversations and agreed to provide other controlled substances or look for other controlled substances on behalf of the conspiracy." (App. 121.) Defendant is correct when he asserts that there was no factual basis for concluding he personally dealt with cocaine; it was not necessary to establish that the defendant had any direct involvement with cocaine, however.
 
 
 13
 Defendant does not seriously contend that his admissions and the government's representations at the time of the plea hearing did not provide an adequate factual basis for his plea. What he does contend is that 79 days later, when he attempted to withdraw his plea, he then denied that he had any conversations or other involvement relative to cocaine. This denial, without more, however, is of little consequence. In reviewing the adequacy of the factual basis for a plea, we review the record made at the time the plea was taken. See United States v. Goldberg, 862 F.2d 101, 105 (6th Cir.1988). Defendant does not contend that he was under any disability at the time of the plea hearing or that he failed to understand the proceedings. If he were allowed to withdraw his plea based on the fact that a considerable time after the plea was given he decides to give a different version of what occurred, there would be no finality to the plea process whatsoever. In sum, the defendant has shown no inadequacies in the factual basis established by the trial judge at the time the plea was taken.
 
 
 14
 We now turn to defendant's claim of ineffective assistance of counsel. We note initially that a defendant must raise an ineffective assistance of counsel claim at the trial level or, failing to do so, in a habeas corpus proceeding. See United States v. Hill, 688 F.2d 18, 21 (6th Cir.), cert. denied, 459 U.S. 1074 (1982). When the record is adequate to assess the merits of the claim, however, an appellate court may make an exception to this rule and consider the ineffective assistance claim. United States v. Straughter, 950 F.2d 1223, 1234 (6th Cir.1991), cert. denied, 112 S.Ct. 1505 (1992). We believe that the record here is adequate for us to dispose of defendant's ineffective assistance of counsel claim.
 
 
 15
 Before discussing the claim, however, an overall observation is relevant. Although the sentencing guidelines were intended to eliminate at least some of the discretion that was formerly available to the parties to a plea bargain, the plea bargain here was as close to a negotiated sentence as one can get. Regardless of the plea computations that were mandated by the guidelines, the government agreed to recommend a sentence of 96 months. It did make such a recommendation, and the court imposed a sentence of 96 months. Under these circumstances, we find little equity in any of defendant's arguments. Insofar as defendant's ineffective assistance of counsel argument is concerned, he makes the bald assertion that his counsel did not understand the "equivalency" aspect of his plea bargain. We do not find that the record supports this assertion. At the hearing on the motion to withdraw the plea, counsel made it clear that defendant was contending that he was involved with only marijuana, not cocaine. The court painstakingly explained that it understood that, and any reference to "equivalency" did not mean the defendant had possessed or distributed cocaine. To the degree defense counsel's argument was somewhat thin, this was not the result of any ineffective performance on his part but, rather, the complete lack of any merit to the argument that he was making at his client's request.
 
 
 16
 Since we find no errors committed by the trial court with regard to Washpun's plea or sentence, the conviction and sentence are AFFIRMED.
 
 II.
 The Velasquez Appeal
 
 17
 We now turn to the sole issue raised by Velasquez on appeal, which involves the proper computation of his sentence. Velasquez entered a guilty plea pursuant to a Rule 11 plea agreement, which had as an attachment sentencing guideline worksheets representing the agreed upon position of the government and the defendant as to the appropriate sentencing range. These worksheets indicated that a statutorily mandated minimum term of 60 months was implicated, and therefore the guideline range was 60-71 months. The agreement further provided that, subject to the agreement of the court, no sentence of incarceration would exceed 60 months. Further, the government agreed "that the sentence for the instant offense shall be imposed either to run concurrently with the remainder of the defendant's undischarged sentence imposed on August 10, 1992, or pursuant to Guideline 5G1.3(c), whichever is more beneficial to the defendant." (App. 30.)
 
 
 18
 At sentencing, the only discussion between the parties and the court concerned how the new sentence was to be made concurrent with the sentence the defendant was presently serving. There appeared to be general agreement that defendant's prior sentence involved conduct that also was considered as part of the relevant conduct factored into the sentence computation in this case. At sentencing, the government argued that the date to be used to start the concurrent running of the two sentences was August 10, 1992, the date that the defendant formally commenced serving his earlier Indiana sentence. Defense counsel argued that the date should be backed up even further, wanting the defendant to be credited for the time he spent in pretrial detention, prior to formally commencing the service of his sentence in Indiana.
 
 
 19
 The trial judge resolved the issue in the following language:
 
 
 20
 It is going to be the sentence of the Court that the defendant be turned over to the Bureau of Prisons and confined for a period of 60 months.
 
 
 21
 That is to run concurrent to the sentence imposed by the United States District Court in Indiana. And I am recommending that this concurrent sentence commence on August 2nd, 1992 [sic].
 
 
 22
 (App. 104-05.)
 
 
 23
 The August 10, 1992, date was the date the formal service of the Indiana sentence began and was not the date when Velasquez entered pretrial detention. The court memorialized its oral pronouncement in its judgment and commitment order, which contained the following language:
 
 
 24
 The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 60 months; said term shall run concurrent with the U.S. District Court, Northern District of Indiana, Hammond Dkt. # HCR-92-00112-001 which began on 8/10/92.
 
 
 25
 (App. 69.) This judgment was entered on February 11, 1994.
 
 
 26
 On February 16, 1994, the defendant filed a notice of appeal indicating he was appealing from his conviction. No mention was made in the notice of appeal concerning the sentence imposed. Velasquez' notice of appeal went on to state that he was raising the issues of insufficiency of the evidence and ineffective assistance of counsel. It is interesting to note in this regard that these were not issues discussed at Velasquez' sentencing, although these issues were implicated by the arguments made by Washpun's counsel on behalf of his client. One is left with the distinct impression that Velasquez had no intention of appealing at the conclusion of the sentencing hearing, but upon becoming aware that Washpun was appealing after pleading guilty, Velasquez decided to appeal and track the issues raised by Washpun.
 
 
 27
 Several months later, on August 15, 1994, newly appointed appellate counsel for Velasquez filed his brief with this court. The brief is completely silent as to any claims or contentions involving insufficiency of the evidence or ineffective assistance of counsel. The only issue raised on appeal concerns the manner in which Velasquez' concurrent sentence was being interpreted by the Bureau of Prisons. The only indication of what triggered this argument is to be found in a sentence monitoring computation data sheet issued by the Bureau of Prisons on June 16, 1994, well after the notice of appeal was filed. The document is somewhat difficult to understand, and neither defense counsel nor the government offer any explanation of the contents of the document. It would appear, however, that the Bureau of Prisons has determined that Velasquez' sentence of 60 months is not to be computed using August 10, 1992, as the starting date for the running of the 60 months.
 
 
 28
 It is not clear to us whether an error has been committed but, in any event, we are unable to address this issue for a number of reasons. First of all, it was not raised in the district court. Second, the notice of appeal filed by the defendant does not indicate any appeal being taken from the sentencing order and further specifically sets forth the claims of error being raised which do not include any claim relative to the manner in which the concurrent sentence is being interpreted by the Bureau of Prisons. This is understandable because on the date that the defendant filed his notice of appeal, he would have had no idea how the Bureau of Prisons was going to compute his sentence.
 
 
 29
 Although defense counsel attempts, by the way in which he formulates the issue he raises on appeal, to bring this issue before the court in Velasquez' direct appeal, we are unable to consider this issue. Defendant has made no effort to exhaust his administrative remedies with the Bureau of Prisons. This is a prerequisite to his being able to address the substantive merits of his claim before this court. See United States v. Westmoreland, 974 F.2d 736, 737 (6th Cir.1992), cert. denied, 113 S.Ct. 1818 (1993).
 
 
 30
 Accordingly, the appeal of Nicolas Velasquez is DISMISSED without prejudice to his right to raise the issue of the proper interpretation of his sentence in an appropriate proceeding.
 
 
 
 [1]
 The issues raised by the defendants in these consolidated appeals are unrelated except that both defendants were sentenced in the same case, by the same judge and on the same day